IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

  v.

GARY ADAMS,

    Defendant

No. CR-01-0329 MMC

**ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Before the Court is defendant Gary Adams' ("Adams") "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence," filed June 23, 2008, as supplemented on August 7, 2008. The government has filed opposition, to which Adams has replied. Additionally, with leave of court, Adams has filed an affidavit and the government has filed a response thereto. Having read and considered the parties' respective written submissions,[1] and having reviewed the record of the proceedings, the Court rules as follows.

---

[1] On January 18, 2011, Adams filed a document titled "Motion for the United States District Judge Maxine M. Chesney Rule on Pleadings." Although neither the Federal Rules Governing Section 2255 Proceedings nor the Local Rules of this District allow, absent leave of court, the filing of additional documents following the filing of a reply brief, the Court has considered the filing, which filing, in essence, consists of a restatement of arguments set forth in Adams' June 23, 2008 and August 7, 2008 filings. The only new argument made in the January 18, 2011 filing is that the Fair Sentencing Act of 2010 should apply to Adams. Because Adams was sentenced prior to the enactment of the Fair Sentencing Act, however, the Act does not apply to him. See United States v. Baptist, 646 F.3d 1225, 1229 (9th Cir. 2011) (holding Fair Sentencing Act does not apply to "defendants who had been sentenced prior to the August 3, 2010 date of the Act's enactment"); cf. Dorsey v. United States, — U.S. —, 2012 WL 2344463 (June 21, 2012) (holding Fair Sentencing Act applies to offenders who committed "crack cocaine crime" before August 3, 2012 and who were sentenced after August 3, 2012).

**BACKGROUND**

In a superseding indictment filed January 30, 2003, Adams was charged with two counts of possession with intent to distribute cocaine base and one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).[2] On February 7, 2003, Adams pleaded guilty to one court of possession with intent to distribute cocaine. Thereafter, Adams moved to set aside his guilty plea, which motion the Court granted on July 13, 2005.

On April 13, 2006, the government filed an Information for Increased Punishment, stating therein that if Adams was convicted, he would be subject to a mandatory minimum sentence of 20 years in light of certain specified prior felony drug convictions. A jury found Adams guilty of all charges and, on July 19, 2006, the Court imposed a sentence of 262 months, comprising 120 months on Count One, 262 months on Count Two, and 48 months on Count Three, all terms to be served concurrently. Judgment was entered on July 26, 2006. The Court of Appeals for the Ninth Circuit affirmed the judgment on December 27, 2007, and, on March 24, 2008, the Supreme Court denied Adams' petition for certiorari.

On May 27, 2008, Adams, proceeding pro se, filed a motion, pursuant to 18 U.S.C. § 3582(c)(2), seeking an order reducing his sentence to 210 months in light of an amendment to the Sentencing Guidelines. Thereafter, counsel for Adams filed a sentencing memorandum, by which Adams sought a greater reduction than that initially sought, specifically, a reduction to 96 months. On May 22, 2009, the Court granted the motion in part, specifically, by reducing the sentence to the statutory mandatory minimum of 240 months. On June 2, 2009, the Clerk entered an amended judgment.[3]

//
//

---

[2] In the initial indictment, filed September 6, 2001, Adams was charged with one count of possession with intent to distribute cocaine base and one count of possession with intent to distribute cocaine.

[3] Although Adams subsequently appealed the amended judgment, the Ninth Circuit, on July 19, 2010, dismissed the matter because Adams failed to perfect the appeal.

**DISCUSSION**

By the instant motion, Adams seeks an order setting aside his conviction. Specifically, Adams contends his trial counsel provided ineffective assistance, and, additionally, that the Court erred in the manner in which it conducted a hearing on his request for new counsel. The Court considers each ground in turn.

**A. Ineffective Assistance of Counsel**

Adams alleges his trial counsel was ineffective in failing to advise him that he had a right to testify at the trial, in not moving to exclude certain evidence, in not offering sufficient evidence to support a "fabrication defense," in not objecting to certain statements made in the government's closing argument, and in not filing a motion for a new trial.

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components." Strickland v. Washington, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient." Id. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. "Second, the defendant must show that the deficient performance prejudiced the defense." Id. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id.

**1. Failure to Inform Adams of Right to Testify**

Adams alleges his trial counsel "never informed him of his right to testify." (See Pet., filed August 7, 2008, at 10.) More specifically, Adams alleges that although he made "repeated requests" to his counsel to testify, his counsel determined Adams should not testify and failed to advise him of his right to make the "final decision" whether to testify. (See id.) According to Adams, had he known he had the right to testify, he would have "offered testimony exculpating him from at least some of the drugs for which he was convicted." (See Reply, filed November 12, 2008, at 24.)

Assuming, arguendo, Adams' counsel in fact did not advise Adams he had the right

1  to decide whether to testify,[4] Adams cannot establish such omission constituted ineffective
2  assistance of counsel. Specifically, the Ninth Circuit has held that a defendant is not
3  entitled to relief from a conviction based on a claim that his trial counsel failed to advise him
4  of his right to testify. See United States v. Edwards, 897 F.2d 445, 446-47 (9th Cir. 1990)
5  (affirming denial of motion for new trial, where defendant asserted his counsel did not
6  consult with him before deciding not to call him as witness and defendant "was unaware" of
7  his right to testify; holding "broad rule that the court has no duty sua sponte to advise a
8  defendant of his right to testify would be meaningless if it were possible for defendants to
9  obtain new trials simply by claiming ignorance of the right"); see also United States v.
10 Nohara, 3 F.3d 1239, 1243-44 (9th Cir. 1993) (characterizing as "precluded" by Edwards
11 defendant's claim he was "denied his Sixth Amendment right to effective assistance" where
12 his counsel did not inform him of "his right to testify").

       Moreover, the record establishes that Adams was aware of his right to testify. Specifically, in a Plea Agreement personally signed by Adams, Adams stated he agreed to "give up all rights that [he] would have if [he] chose to proceed to trial," including the right "to remain silent or testify" (see Document No. 102 at 2:12-14), and, in addition, the Court, during the hearing in which Adams entered that guilty plea (see Transcript, February 7, 2003, at 20:2-3), advised Adams of his right to testify at trial.[5]

       Accordingly, to the extent Adams' ineffective assistance claim is based on trial counsel's alleged failure to inform Adams of his right to testify, Adams fails to show he is entitled to relief.

//
//

---

[4] By order filed May 11, 2009, the Court directed Adams to file one or more declarations to support his claim that he was deprived of his right to testify. Although Adams subsequently filed an affidavit in which he set forth the nature of the testimony he states he would have given, he did not submit a declaration, affidavit, or any other evidence to support his allegation that his counsel failed to advise him of his right to testify.

[5] As stated above, Adams later moved to set aside his guilty plea, which motion was granted.

4

**2. Failure to Move to Exclude Identification Card and Key**

On January 31, 2001, officers with the San Francisco Police Department and agents with the Drug Enforcement Administration ("DEA") executed a search warrant issued by then Superior Court Judge Carlos Bea. (See Mateer Aff., attached as Ex. 1 to Martikan Decl. filed August 11, 2008.) The warrant authorized, inter alia, the search of the premises located at 1686 Hayes Street #4, San Francisco, California. (See id.) During the search of the Hayes Street premises, the officers and agents executing the warrant seized a number of items, including "forty-six individually wrapped rocks" of cocaine found in a pocket of clothing Adams was wearing at the time he was searched (see Transcript of Proceedings ("Trial Tr.") 353:13 - 354:7), "20 individually wrapped rocks in a plastic bag" as well as "another plastic bag with a large rock," both found in an inside pocket of a brown leather jacket located in the bedroom closet (see Trial Tr. 365:8 - 366:4; 370:22-25), and a "large green bag [that] contained large amounts of suspected cocaine salt and base" along with another "green bag [that] contained a dus[t] mask, rubber gloves, a sifter and a scale," both found inside a pocket in a tan trench coat located in the bedroom closet (see Trial Tr. 375:12 - 377:10).

Shortly before trial began in April 2006, DEA Agent David Mateer ("Agent Mateer") searched the trench coat and located in a "small pocket" a "California I.D. card for one Gary Adams and a key with a metal tab on it with four numbers." (See Trial Tr. 377:11-21.) The government thereafter notified the defense and the Court of said additional evidence.

Adams alleges his trial counsel was ineffective in not moving to exclude the identification card and the key. According to Adams, his trial counsel should have argued that allowing such evidence to be admitted would have "threatened" Adams' right to a fair trial because, up to that point, the "entire defense theory" had been "premised on the fact that there was no evidence providing a direct link between Adams and the trench coat." (See Def.'s Mot. at 24.)

The Court finds Adams has failed to show his trial counsel was ineffective. First, Adams' trial counsel, upon learning of the government's discovery of the card and key

shortly before trial, did move for a continuance of the trial by "at least 60 days" (see Trial Tr. 1:8-12), and, in support thereof, described the investigatory steps he intended to take during such interval (see Trial Tr. 4:11-25, 8:20-24).  Adams fails to argue, let alone show, the manner in which the request for a continuance was made was deficient, and the Court finds it was not.  Second, Adams fails to identify the existence of any legal ground upon which counsel could have moved to exclude the subject evidence.  Adams has not identified, for example, any ground upon which to suppress such evidence, which, as noted, was seized pursuant to a search warrant.  The failure to object to the introduction of evidence, where such objection would have been overruled, does not constitute deficient performance.  See Matylinsky v. Budge, 577 F.3d 1083, 1093-94 (9th Cir. 2009) (holding trial counsel's failure to object to testimony is not deficient if objection properly would have been overruled), cert. denied, 130 S. Ct. 1154 (2010).

Accordingly, to the extent Adams' ineffective assistance claim is based on trial counsel's not moving to exclude the identification card and key, Adams fails to show he is entitled to relief.

### 3. Failure to Offer Evidence to Support Fabrication Defense

Adams alleges his trial counsel did not offer sufficient evidence to support a "police fabrication" defense or to argue persuasively to the jury that any such "fabrication" occurred.  (See Pet. at 9.)  Adams, however, points to no evidence his trial counsel could have offered, and did not offer, to support a finding that the drugs found on Adams' person and/or in the coats found in the bedroom closet were planted or otherwise "fabricated" by the police.[6]  Nor has Adams pointed to any evidence that was offered and that his trial

---

[6] Adams seems to suggest that his own testimony would have supported a "fabrication" defense.  In his affidavit in which he sets forth the testimony he would have given, the only reference therein to any "fabrication" is Adams' statement that he "believed" one of the officers who executed the search warrant "has a reputation on the street for planting narcotics."  (See Sworn Affidavit, filed May 26, 2009, at 3.)  The officer to which Adams refers, however, was not called as a witness and, consequently, his reputation for honesty was not admissible.  Compare Fed. R. Evid. 608(a) (providing "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness") (emphasis added) with Fed. R. Evid. 404(a)(1) (providing "[e]vidence of a person's character or character trait is not admissible

counsel failed to address during his closing argument. In short, Adams fails to identify any deficient performance with respect to the presentation, or lack thereof, of a fabrication defense. See Strickland, 466 U.S. at 690 (holding "convicted defendant making a claim of ineffective assistance must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment"); see also, e.g., James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) (holding defendant convicted of murder failed to demonstrate his counsel was ineffective when counsel did not "present [ ] evidence that petitioner was not the shooter," where petitioner failed to "identify what evidence counsel should have presented which would have shown that petitioner did not shoot [the victims]").

Accordingly, to the extent Adams' ineffective assistance claim is based on trial counsel's not sufficiently presenting a fabrication defense, Adams fails to show he is entitled to relief.

**4. Failure to Object to Statements Made in Closing Argument**

**a. Safe Deposit Box Key**

During his closing argument, the Assistant United States Attorney ("AUSA") argued that the jury should find the key found in the trench coat was a safe deposit box key. Adams alleges his trial counsel was ineffective because he did not object on the ground that "there was no evidence supporting this factual assertion." (See Def.'s Mot. at 17.)

Contrary to Adams' allegation, evidence was offered to support a finding that the key was a safe deposit box key. In particular, Agent Mateer testified he visited eight different bank branches and that at all but one, the bank officials recognized the item as a safe deposit box key. (See Trial Tr. 525:23 - 527:15; 652:18 - 653:11.) In light of Agent Mateer's testimony, an objection that no evidence supported the AUSA's argument would have been overruled, and, consequently, the failure to raise such objection did not constitute ineffective performance. See Matylinsky, 577 F.3d at 1093-94.

Accordingly, to the extent Adams' ineffective assistance claim is based on trial

---

to prove that on a particular occasion the person acted in accordance with the character or trait").

counsel's not objecting to the argument that the key was a safe deposit box key, Adams fails to show he is entitled to relief.

### b. Vouching

Adams alleges the AUSA, during closing argument, engaged in improper vouching with respect to two witnesses, specifically, Sergeant Will Scott ("Sgt. Scott"), who participated in the January 2001 search of the Hayes Street premises, and Beulah Whatley ("Whatley"), who lived with Adams at the Hayes Street premises. Adams further alleges his trial counsel was ineffective by not objecting to said asserted vouching.

"Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." United States v. Necoechea, 986 F.2d 1273, 1276 (9th Cir. 1993). A prosecutor, however, "can argue reasonable inferences based on the evidence," including that a witness is "lying," see id., or is "telling the truth," see id. at 1279.

Here, the AUSA, during closing argument, urged the jury to find Sgt. Scott credible, as follows:

> And Sergeant Will Scott, we would submit, based on his demeanor, his personal appearance, his delivery of testimony, his experience, was a credible trustworthy witness. He's a sergeant inspector. And when he testified that he heard the defendant make a statement referencing what he had on him and that's all he had, you should credit that testimony.

(See Trial Tr. 659:24 - 660:5.)

Contrary to Adams' assertion, the above-quoted statement was not vouching, but, rather, a permissible comment on Sgt. Scott's credibility as a witness, based on the manner in which Sgt. Scott presented himself on the stand and his testimony.

In his rebuttal argument, the AUSA, in response to an argument by Adams' counsel suggesting Sgt. Scott might not have been entirely credible, reiterated his argument that Sgt. Scott was credible, as follows:

> But the attack on Sergeant Scott just now, saying that he lied a little bit. He wanted to help the guys out a little bit, so he'll lie a little bit about hearing the

8

comment, but he's not willing to say he actually saw the dope.[7]

That just – you need to reject that. Sergeant Will Scott is a trustworthy – based on his demeanor and everything else, he's a standup guy. He's a cop. You ought to be proud of him as: that's one of the law enforcement officers up there. But instead, [defense counsel] has to explain the statement that he heard the statement by saying: "Well, he lied a little bit, but he wasn't willing to say he saw the dope coming out of the pocket." The drugs coming out of the pocket, just like that. Who knows where Officer Scott was looking? Still trying to get Chris [Adams] under control.[8] He heard the comment.

We would submit Sergeant Scott is not going to come before you under oath in a case where he is almost related to the defendant. He went to school. He's friends with Officer Meaders at Park Station, who is his half brother. And lie? No.

Look at his demeanor. Look at Sergeant Scott. He told you the truth. He testified as to what he heard.

(See Trial Tr. 695:3-25.)

Contrary to Adams' argument, the above-quoted comments by the prosecutor were not improper vouching, but, rather, permissible argument, based on inferences drawn from the record, that Sergeant Scott was a credible witness. (See, e.g., Trial Tr. 317:9-22, 327:1-15 (testimony by Sgt. Scott describing events at time of search and relationship between himself and Adams).)

The final statement Adams characterizes as improper vouching is the following statement about Whatley, made in the AUSA's rebuttal argument:[9]

And we would submit that Beulah Whatley is a see-no-evil-speak-no-evil-don't-trouble-me situation. She knows what is going on. She wants her stuff out of there. She doesn't want her stuff in the closet because if the police

---

[7]In his closing argument, Adams' counsel had commented on certain testimony given by Sgt. Scott (see Trial Tr. 672:25 - 673:4), in particular, Sgt. Scott's testimony that, shortly after the officers entered the Hayes Street premises, he heard Adams state to another officer, "Only thing I have on me is what is in my pants pocket. Can you just take me to jail?," and that he did not see anyone remove drugs from Adams' person (see Trial Tr. 323:15-25).

[8]Chris Adams is the brother of defendant Adams and was present at the time of the officers' arrival at the Hayes Street premises. (See Trial Tr. 317:6-11.)

[9]The subject rebuttal argument appears to have been made in response to an argument by Adams' counsel that reasonable doubt existed as to who possessed the drugs found in the coats in the bedroom closet, given that Whatley, as well as others, had access to the closet. (See Trial Tr. 679:22 - 680:1.)

9

> ever search the closet and find her stuff in there and drugs, it's going to be a problem potentially for her.
>
> She is not involved in drugs. There's no doubt about it. Why she allowed Mr. Adams to be there and basically have exclusive use of the closet I can't explain that. That's something that is an issue for her.
>
> I'm not here to make value judgments on Ms. Whatley. But ask yourself why does the tenant of the apartment who pays the rent doesn't have her stuff in the closet? Now I think the answer to that is obvious. If the landlord knows about the foot traffic reports, Beulah Whatley knows about the foot traffic reports. She doesn't want any part of it.
>
> And the rest is for you to decide.

(See Trial Tr. 697:8-25.)

Again, contrary to Adams' contention, the prosecutor's comments concerning Whatley were not improper vouching, but, rather, were based on inferences from testimony in the record. (See, e.g., Trial Tr. 562:1-6 (testimony by Whatley that she paid the rent and did not allow drugs in the home); Trial Tr. 546:4-18; 578:10- 579:1 (testimony by Whatley that she used hall closet, Adams was only male living at residence, Adams used bedroom closet and she wouldn't have had reason to go through pockets of his clothes); Trial Tr. 301:6-13 (testimony by landlord that he heard from "a neighbor that there was a lot of activity" at subject premises in evening hours).)

Because none of the AUSA's comments concerning Sgt. Scott and Whatley constituted improper vouching, any objection to such argument on the ground it constituted vouching would have been denied, and, consequently, the failure to raise such objection did not constitute ineffective assistance. See Matylinsky, 577 F.3d at 1093-94. Moreover, as the Ninth Circuit has observed: "Because many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements, the failure to object during closing argument and opening statement is within the wide range of permissible professional legal conduct." See Necoechea, 986 F.2d at 1281.

Accordingly, to the extent Adams' ineffective assistance claim is based on trial counsel's not objecting to statements in the government's closing argument on grounds of vouching, Adams fails to show he is entitled to relief.

### 5. Failure To File Motion for New Trial

Adams alleges that after the jury found him guilty, his trial counsel was ineffective because he did not move for a new trial.[10] Although not clearly expressed, Adams appears to argue the grounds for such a motion should have been that the weight of the evidence did not support a finding the drugs found in the two coats located in the bedroom closet belonged to him. (See Def.'s Mem. of P. & A., filed June 23, 2008, at 9.)

"If [a trial] court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury." United States v. Kellington, 217 F.3d 1084, 1097 (9th Cir. 2000) (internal quotation and citation omitted).

Here, Adams fails to show the evidence at trial "preponderate[d] . . . against the verdict" to any extent, much less that a miscarriage of justice may have occurred. As discussed above, the jury was entitled to credit the government's evidence that drugs and items connected with drug trafficking were found in the pockets of coats in the bedroom closet at the Hayes Street premises, that one of the two coats contained Adams' identification card, that Adams was the only male who lived at the Hayes Street premises, and that the bedroom closet was used exclusively by Adams. In light of such evidence, coupled with evidence that forty-six rocks of cocaine, each separately packaged, were found on Adams' person at the time of his arrest in the Hayes Street premises, there is no showing that Adams was entitled to a new trial. Consequently, the failure to file a motion for a new trial did not constitute ineffective assistance of counsel. See Baumann v. United States, 692 F.2d 565, 573 (9th Cir. 1982) ("The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel.").

//

---

[10] At the close of the government's case, Adams' counsel orally moved, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for a judgment of acquittal, which motion was denied. (See Trial Tr. 610:24 - 611:6.)

11

1      Accordingly, to the extent Adams' ineffective assistance claim is based on trial counsel's having not filed a motion for a new trial, Adams fails to show he is entitled to relief.

**B.  Denial of Motion for Substitution of Counsel**

On April 12, 2006, Adams, acting pro se, filed a request for new counsel, which he supplemented on April 13, 2006. On April 13, 2006, the Court conducted a hearing on the matter outside the presence of counsel for the government, after which hearing the Court denied the request. Adams asserts he is entitled to an order setting aside his conviction because, according to Adams, the Court failed to adequately inquire of him the reason(s) for his request. In its opposition, the government argues the claim has been procedurally defaulted.

Where, as here, a defendant seeking relief under § 2255 had the opportunity to raise a claim on direct appeal, but did not, the claim is procedurally defaulted and must be dismissed, unless the defendant demonstrates "cause" for and "prejudice" from the procedural default or, alternatively, that he is "actually innocent." See United States v. Ratigan, 351 F.3d 957, 962 (9th Cir. 2003); see, e.g., United States v. Nunez, 2011 WL 587944 (D. Idaho 2011) (holding defendant's claim, first raised in § 2255 motion, that "court erred in denying substitution of trial counsel" was "in procedural default")

Here, there is no showing, or even an allegation, by Adams that he has any explanation, let alone good cause, for his failure to raise such claim on direct appeal, nor has he shown he is actually innocent. Moreover, Adams points to no specific area of inquiry that should have been explored by the Court and, consequently, Adams fails to show he has suffered prejudice as a result of the procedural default of this claim.

Accordingly, Adams' claim that the Court erred in denying his request for substitution of counsel has been procedurally defaulted and is subject to dismissal.

//
//
//

**CONCLUSION**

For the reasons stated, Adams's motion pursuant to § 2255 is hereby DENIED.

**IT IS SO ORDERED.**

Dated: July 5, 2012

MAXINE M. CHESNEY
United States District Judge